## ESTATE OF CASPER DULL, DECEASED. (2)

APPEAL BY N. J. DULL FROM THE ORPHANS' COURT OF MIFFLIN 'COUNTY.

Argued May 27, 1890—Decided October 6, 1890.

1. In the distribution of a decedent's estate, the amount due to the estate from an insolvent residuary legatee is properly deducted from his share of the fund, notwithstanding the latter is held by a claimant under an assignment thereof made and accepted without notice of the indebtedness.

2. Notwithstanding, also, the fact that at a sheriff's sale of the interest of the maker of a note, in certain lands sold on an execution in favor of an assignee of the share, a notice was given by the executor, of an uncertain nature, which caused, as alleged, the interest to be sold at less than its real value.

3. Where a residuary legatee, as a purchaser of land of the estate, executes a mortgage thereon to secure the annual interest payable to a life-tenant, his interest in the principal is merged in his fee, and on a judicial sale of the land on a subsequent judgment his title will pass discharged of the mortgage.

4. In such case, on distribution, after the death of the life-tenant, the mortgage of the legatee, to the extent of the excess of the amount secured by it over his distributive share of the estate, represents an indebtedness still subsisting against him, or against an assignee of his share as residuary legatee.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 63 July Term 1890, Sup. Ct.; court below, number and term not given.

On December 11, 1886, James J. Dull, one of the executors of the will of Casper Dull, deceased, filed an account, and on January 14, 1887, *Mr. M. McLaughlin* was appointed auditor to report a distribution of the balance shown thereby.

The auditor, on November 12, 1888, filed a report from which it appeared that Casper Dull, deceased, directed by his will that

Statement of Facts.

in case none of his children should take his real estate at the valuation or bids as therein provided, his executors, who were James J. Dull, Daniel M. Dull, Andrew J. Dull and C. Penrose Dull, should sell the same at public sale, at which sale any of the executors could become bidders; that, under said authority, a sale of the land was made in 1881, the executors became the purchasers and made a mortgage upon the lands for $8,566.67, as a principal to secure the annual interest payable to the testator's widow charged thereon; that on January 12, 1884, the interest in said land of D. M. Dull, one of the executors and purchasers, was sold at sheriff's sale on a judgment in favor of Nannie J. Dull; and that the widow of the testator was dead. A memorandum of this mortgage was made in an exhibit attached to the account before the auditor. It appeared, also, from the said exhibit that the executors owed and had "in their hands, reserved for the use of Joseph F. Dull,* arising from the property bought by them, which is represented by two notes of $1,163.79, each, one signed by A. J. and C. P. Dull in favor of J. J. and D. M. Dull, executors, and the other signed by J. J. Dull and D. M. Dull to A. J. and C. P. Dull, executors, dated April 1, 1881, $2,327.58." It appeared further, that the interest of D. M. Dull in the fund for distribution was claimed by Nannie J. Dull, under an assignment thereof made by him to her the date of which did not appear; also, that it was claimed that out of D. M. Dull's share of the fund for distribution there should be deducted before payment the one half of the note for $1,163.79, dated April 1, 1881, made to A. J. and C. P. Dull; that this was resisted on behalf of Nannie J. Dull, the assignee of the interest, on the ground, first, that the interest had been assigned to her without any notice of said claim; and, second, that at the time of the sale of the interest of D. M. Dull in the real estate, on January 12, 1884, certain notices had been given by the executors, by reason whereof the said interest did not bring near its actual value for her execution.

Upon the matters in controversy, the auditor made the following findings of fact:

1. Joseph F. Dull had an eighth interest in the lands of the estate of Casper Dull, deceased.

---

* See the portion of the will of the testator quoted in Dull's Estate, ante p. 113.

2. That, at the sale of the lands to the executors, the interest of Joseph F. Dull remained therein, and the note of April 1, 1881, simply represented the ascertained amount of his interest, on the basis of said sale.

3. That at the sheriff's sale of the interest of D. M. Dull (one fourth) in said land, notice was given by A. Reed, Esq., attorney for the executors of Casper Dull, deceased, that the purchaser or purchasers would buy subject to the interest of Joseph F. Dull therein.

4. That James J. Dull and Andrew J. Dull were represented at said sheriff's sale by C. P. Dull, at whose instance and in whose behalf said notice was given, and that at said sheriff's sale C. P. Dull was a bidder for J. J. Dull, A. J. Dull and himself, and that they became the purchasers of the interest of D. M. Dull in all lands subject to the interest of Jos. F. Dull therein.

5. That by reason of said notice said interest of D. M. Dull sold for a sum far below its real value.

6. That Nannie J. Dull is the bona fide owner for a valuable consideration of the interest of D. M. Dull in all the fund for distribution, and entitled to his share of the fund.

Thereupon, the auditor reported a distribution of the fund, increased by the amount of the mortgage exhibited with the account, awarding, inter alia, the share of D. M. Dull, to wit, the one eighth of the fund, to Nannie J. Dull, assignee of D. M. Dull.

Exceptions to the auditor's findings and distribution having been filed by A. J. Dull and other distributees, after argument thereof the court, BUCHER, P. J., on October 30, 1889, filed the following opinion and decree :

The chief contention, in this distribution, is over the payment of a note, dated April 1, 1881, signed by D. M. and J. J. Dull, for $1,163.79 and five per cent attorney's commissions, with interest from January 12, 1884.

A. J. Dull and C. P. Dull claim to take one half the amount thereof from the share coming to D. M. Dull, showing that he is insolvent, and claiming that otherwise it could not be collected from him. Nannie J. Dull, his wife and assignee of his share in the fund for distribution, resists this. It is not claimed by her or her husband that the note was not properly given by

him, or that it was ever paid. Her objection to the payment of the same is grounded upon the allegation that, at the sheriff's sale of the real estate of her husband, D. M. Dull, sold on a writ issued by her, notice was given by some one or all of the executors of Casper Dull that said real estate would be sold subject to the interest of Joseph F. Dull in the same, and that therefore the purchasers of said real estate would have to pay this note, that it cannot be taken from the share of her husband in this proceeding; and, further, that she was the bona fide assignee of her husband's share, and that it could not be paid to her detriment.

Evidence was taken before the auditor to sustain her position, and the auditor finds therefrom, as a fact, " that Joseph F. Dull had one eighth interest in the lands of the estate of Casper Dull, deceased." We have looked in vain to discover any parol or written testimony in this record to justify this finding; on the contrary, the will of Casper Dull shows that at the time of the sheriff's sale Joseph F. Dull had no interest in the real estate. To this may be added the admission on the record, "that these lands were held by James J. Dull, D. M. Dull, A. J. Dull and C. P. Dull, as tenants in common," and the levy of the fieri facias, on which Nannie J. Dull sold the lands, described her husband's interest as the undivided one fourth part, which would necessarily exclude Joseph F. Dull from having any interest in it.

This conclusion will nullify the finding of fact No. 2, and affect more or less the findings of fact Nos. 3, 4 and 5. The testimony shows there was a notice given at the sale. Whether it was that the property was selling subject to the interest of Joseph F. Dull therein, or subject to the dower mortgage of Jane Dull, widow, in which Joseph F. Dull had an interest, is uncertain, the evidence being unsatisfactory and somewhat contradictory. But, whichever may be the truth, it will not justify the non-payment of the note in question. The evidence of the sheriff and others is uncontradicted that, after the notice was given, he paid no attention whatever to it, but went on and sold as usual: Barnet v. Washebaugh, 16 S. & R. 410; Woods' App., 9 Cent. R. 377.

Besides, no evidence that we can discover connects this notice with the note in controversy, that it represented Joseph's inter-

est. The note never was entered, so far as we can ascertain; never was a lien on the real estate sold. Giving notice by third parties that a sheriff's sale would be subject to a loose note, that was not a lien, is, we think, novel. To be effective it should be precise and clear, qualities not to be found in the evidence. We are not clear, if the note had been a lien on the lands sold, and notice had been given so as not to discharge its lien, but that the holders could take it out of this or any other fund of the debtor until paid.

[The auditor finds as a fact, No. 5, "that by reason of said notice said interest of D. M. Dull sold for a sum far below its value." We think this finding conjectural. We discover no evidence to support it.] [5] The only evidence that bears on the subject is the deeds, which show what the property brought when sold by the executors as a whole, and the return of the sheriff, which shows that D. M. Dull's one fourth brought at the sale in question, deducting the mortgage which it is conceded by all parties that it was sold subject to, the one fourth interest brought more at the sheriff's sale proportionately than the whole did at the executors' sale. [We are of opinion, therefore, that the one half of this note should be deducted from the share of D. M. Dull and given to the holders of said note, and that the assignment by D. M. Dull of his share to his wife will not prevent it from being liable for its proper debt to the estate.] [2]

The ninth exception objects to any part of the fund being awarded to Joseph F. Dull. We have heretofore decided in the matter of the petition of Joseph F. Dull for an order on his trustees to pay certain costs, that the interest of Joseph F. Dull under the will of his father was committed to his trustees, constituting an active trust, and that Joseph F. Dull had no control over it: [Ante, p. 113.] We still adhere to that opinion, and direct that the share awarded to Joseph F. Dull be paid to his trustees. The record does not show that it was claimed in any other way, and it was doubtless an oversight in the auditor not awarding it as claimed.

The only other matter that requires notice is raised by the eleventh exception, wherein the exceptants object to any part of the dower mortgage of $8,566.67, and its interest, being distributed to D. M. Dull or Nannie J. Dull, his assignee. This

Opinion of Court below.

mortgage, together with several other mortages and claims, is a mere exhibit showing what claims the estate owns, in addition to what the accountant has charged himself with in his account, but we have been, as we suppose the auditor was, asked to pass upon them so that the whole estate might be settled up.

The contention about this arises as follows: This mortgage was given by the Messrs. Dull, the purchasers of the land at the executors' sale, of whom D. M. Dull was one, conditioned to pay the interest thereof to Jane Dull, widow, during her natural life, and at her death the principal equally to the eight children. Jane Dull, the widow, being dead, the exceptants contend that the one eighth part, or the share of D. M. Dull, one of the mortgagors, is merged in the fee, and that when the interest in the mortgaged premises was sold by the sheriff, on the writ of his wife, the purchaser took it discharged from that share of the mortgage coming to him, especially against her and him. This is the general rule of law in such cases, unless there is some equity which requires the rule to be suspended to prevent injustice being done. We see nothing like that in this case. Washburn on Real Property, b. 1, ch. 16, § 6; Reigle v. Seiger, 2 P. & W. 340; Duey v. Clemens, 1 Pa. 118 rule the principle, to which may be added Stecker v. Shimer, 5 Wh. 452.

[The one eighth of the amount of that mortgage should be deducted from the share of D. M. Dull.] [3] [The same would apply to the other mortgagors; but, as they have to pay the same, it will make no difference as to them. The result we have come to, makes the amount to be paid to each heir the same as the auditor has found, except the share of D. M. Dull assigned to Nannie J. Dull, from which there is to be deducted one half of note, interest and commissions, which make $788.16, and that amount is awarded to A. J. and C. P. Dull, executors of Casper Dull; and the further sum of $1,300.34, it being the one eighth of the dower mortgage and interest, is to be deducted from said share of D. M. Dull, and the share of Joseph F. Dull to be paid to his trustees.] [4]

Thereupon, Nannie J. Dull, took this appeal, specifying that the court erred:

1. In sustaining the exceptions to the auditor's report.

2-5. In the portions of the opinion embraced in [ ] ² to 5

*Mr. John A. McKee* and *Mr. D. W. Woods*, for the appellant.

Counsel cited: Miller's App., 84 Pa. 395; Beaupland v. Mc-Keen, 28 Pa. 131; Commonwealth v. Moltz, 10 Pa. 527; Power v. Thorp, 92 Pa. 351; Birney's App., 114 Pa. 519; Ashmead v. McCarthur, 67 Pa. 326.

*Mr. A. Reed*, for the appellees.

Counsel cited: Barnet v. Washebaugh, 16 S. & R. 414; Hellman v. Hellman, 4 R. 440.

PER CURIAM:

This appeal is affirmed upon the opinion of the learned judge of the Orphans' Court, and the appeal dismissed at the costs of the appellant.

Decree affirmed.